UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRELL T. CASBY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2424** |
| **JUSTIN RESTER, ET AL.** | **SECTION "T"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On December 17, 2020, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with plaintiff and counsel for defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of in part without further evidentiary hearing.

### I. Factual and Procedural Background

Plaintiff Terrell T. Casby ("Casby") is convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Sgt. Justin Rester, Master Sgt. Scott Williams ("M.Sgt. S. Williams"), Lt. Jeremy Sistrunk, Lt. Randall Williams ("Lt. R. Williams"), Major Wade Rigdon, Cpt. Scotel Temple, Sgt. Lloyd Spears, Sgt. Aaron Hancock, Sgt. Patrick Magee, and Sgt. Dillon Tynes for use of excessive force, retaliation, verbal threats,

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).
[2] ECF 23.
[3] ECF 1.

and harassment, against defendants Lt. Colonel Donnie Seal and Lt. Colonel Jeff Williams ("Lt. Col. J. Williams") for by-stander liability, harassment, and retaliation, and against defendant Dr. Robert Cleveland for deliberate indifference to his medical needs.

### A.   **Complaint**

Casby alleges that, on July 18, 2019, he sought permission from RCC officials to start a Rastafari club. The RCC officials provided him the steps necessary to seek approval. While awaiting an outside sponsor for the group, Casby claims he submitted a religious exemption form to the Chaplain seeking permission to grow his hair, a sacred right his claimed Rastafari beliefs. The request was denied, and Casby filed suit in Louisiana's 19th Judicial District Court.

Casby further alleges that, after this, he was harassed and threatened by a number of RCC officers because of his repeated refusal to cut his hair, which he claims is part of his religious beliefs as a Rastafarian. Casby claims he received a number of disciplinary violations for refusing to cut his hair. These violations eventually resulted in his placement in extended lockdown.

Casby alleges that on October 16, 2019, he was falsely accused and placed in investigative segregation. The incident leading to this lockdown involved officers putting on tactical gear, armed with mace, shields, and recording devices. The officers were "called off" after he explained what happened but he was still placed in segregation. Nine days later, on October 25, 2019, he was given a disciplinary write-up for destruction of property that he claims was not broken.

Casby alleges that about one month later, on November 20, 2019, he was harassed and verbally abused by Sgt. Branch, who was the same officer involved in the October 25 incident. He claims the officer has had multiple incidents of being intoxicated and causing incidents with the inmates, some of which involved physical altercations. In this incident, he claims that officer

threatened to "whip plaintiff's a - -" and "pay a visit to [his] family."[4] Casby claims that, a short while later, he was waiting for his cell door to open after returning from a shower, and Sgt. Branch bumped him and made more threats to write more disciplinary reports. Casby claims that Sgt. Branch ordered Casby to follow him to front of the tier. Once there, Casby claims that, to humiliate him, Sgt. Branch ordered him to walk backwards with his arms out. He then ordered Casby to the ground and then aggressively approached and struck Casby. Casby reported no injuries from the incident.

Casby alleges that, following this incident, a series of three planned, malicious attacks were carried out by RCC security officers in retaliation for the incident with Sgt. Branch, all in violation of his constitutional rights and Louisiana Department of Corrections ("DOC") regulations prohibiting corporal punishment. The first incident occurred on November 21, 2019, when Sgt. Rester entered Casby's cell to conduct a routine shakedown. Casby was placed in full restraints and moved to the shower. Before reaching the shower, however, Casby claims Sgt. Rester grabbed Casby's upper body and slammed Casby to the floor. Casby claims that after he was on the ground, Sgt. Rester began to scream "stop resisting." This prompted Sgt. S. Williams to apply downward pressure to Casby's ankles. Sgt. Rester also bent Casby's fingers back and twisted Casby's wrist even though he was already handcuffed. Casby claims that Sgt. Rester then asked him if that was the hand Casby used to hit "our brother," apparently referencing the earlier incident with Sgt. Branch.[5] Afterward, Casby complained of severe pain in his right hand. Due to swelling, the medical staff ordered x-rays.

---

[4] ECF No. 1, at 8.
[5] *Id*. at 8.

About two and one-half hours after this attack, Lt. Sistrunk and Lt. R. Williams escorted Casby from the infirmary back to his cell after the x-ray. They walked Casby through a side gate as a shortcut behind the chapel back to his unit. Casby claims that this shortcut is known as a place for things to happen to inmates because there are no cameras. Along the way, Casby claims he was slammed to the ground by the two officers who punched him numerous times in the face, head, and body. Casby claims his mouth was bleeding from cuts to his lips. Because of the amount of blood, the officers decided to "activate the beeper" to summon other officers.[6] When officers arrived, Lt. Sistrunk and Lt. R. Williams held him from behind while Major Rigdon repeatedly punched him in the face. When Major Rigdon finished, Cpt. Temple then punched Casby in the chest. Casby alleges that he was held in placed while the officers punched him, slapped, him and twisted his wrists and fingers.

Casby claims that Lt. Col. Seal and Lt. Col. J. Williams witnessed the brutal beating and did not attempt to stop it. They told the other officers to clean Casby up before taking pictures of his face. Casby further claims that he remained in full restraints while he was cleaned up by the attending nurse before pictures were taken. He claims that the severe swelling and cuts were visible in the photographs.

Casby alleges that the third incident occurred on November 27, 2019, when he requested to be seen in sick call for a headache and severe pain in his right hand. He asked Sgt. Spears when the nurse would arrive, and he told Casby that no one was on duty at that time. Later, Sgt. Spears placed Casby in restraints to escort him to sick call. Casby claims that, once in the lobby area, Sgt. Spears grabbed him and slammed him to the ground causing injury to Casby's left hand. He states that Sgt. Spears then yelled for him to stop resisting, and Sergeants Hancock, Magee, and Tynes

---

[6] *Id*. at 9.

arrived to help accost Casby. Casby alleges that Sgt. Spears threatened to beat and refused to let him attend sick call.

Casby alleges that he has suffered injuries to his face, body, and hands from these beatings. He also claims that he has been falsely accused of disciplinary rule violations and charged restitution for his medical expenses and those of the officers involved in each incident. He seeks declaratory judgment, compensatory damages, and reimbursement for medical expenses charged after the use of force.

**B.  Supplemental Complaint (ECF No. 13)**

In his Supplemental Complaint, Casby alleged claims of deliberate indifference to his medical needs against defendant Dr. Robert Cleveland. He asserts that he first complained on November 22, 2019, of injury to his right hand and swelling and pain on the left side of his face. He claims that he was told he would be placed on the list to see the doctor and for an x-ray. Although he claims he was never seen, he concedes that the x-ray of his right hand was taken the day before, on November 21, 2019.

Casby also indicates that he made another request for treatment between December 4 and 6, 2019. At that time, he was provided an x-ray of his left hand and seen by Dr. Cleveland. Casby claims that Dr. Cleveland told him that the x-rays of his right hand were missing, and the x-ray of his left hand revealed a B.B.-sized piece of metal in the hand. Casby claims that Dr. Cleveland said he would order medication but he never received any. He instead got Tylenol off of the pill cart. He filed another sick call request for medication and was prescribed naproxen for ten days. After that ended, Casby states that he filed another sick call for his pain. He was seen by Sgt. Rester but was dissatisfied with his care and asked to see the doctor. Casby also claims that he

wrote Dr. Cleveland about the effects of Tylenol and naproxen on the kidneys and asked for stronger medication as the "logical" choice.

Casby also alleges that, soon after this, Dr. Cleveland told him that he had a broken bone in his left hand and more x-rays were needed for the right hand. Dr. Cleveland again ordered Tylenol for him. Casby alleges that his pain and suffering continue without consultation with an outside doctor or other corrective measures for his broken bone such as a cast or bandage. He also claims that he has not seen Dr. Cleveland since he was told about the broken bone in his hand.

### C.    *Spears* Hearing Testimony

Casby testified that he was convicted of armed robbery and is serving a 25 year sentence. At the time of the hearing, he had served almost 14 years and had been housed in RCC for about 25 months. He claims that he had been in disciplinary segregation since August of 2019, because of his sentences for numerous disciplinary rule violations, including defiance for not cutting his hair and destroying contraband he was ordered to turn over, and the 90 day sentences he received for his defiance and disobedience charges following the events alleged in this complaint.

Casby stated that soon after he arrived at RCC, he began to inquire about Rastafari religious callouts or services, a religious diet, and access to religious books. His requests were mostly turned down except for the diet. He claims that the harassment by RCC staff began after he sought and was denied permission to grow his hair as a religious practice. After this, he was ordered to cut his hair per the prison rules, and when he refused or disobeyed, he was threatened by the guards and given disciplinary violations and time in segregation.

He testified that he sued Sgt. Rester because the sergeant pulled him out his cell to conduct a shakedown search. He was put in restraints, and on the way to the shower area to wait during the search, Sgt. Rester slammed him to the ground and yelled for him to stop resisting. Casby

stated that the officers said he was being combative and tried to "jack away" from Sgt. Register, but he claims that he said nothing and did not "jack away." Casby also claimed that while he was on the ground on his stomach with his hands cuffed behind his back, Sgt. Rester grabbed his right hand and bent or twisted causing injury. After this, the officers put him in shower for 15 minutes on his knees (no water was running). Casby does not believe that the search was ever done, so he was not sure why they left him in the shower. He filed a grievance complaint, but was denied relief in both steps of review because he was found to be combative and medical opinion controlled about his complaints of hand injury.

Casby stated that he sued M.Sgt. S. Williams because he arrived to assist Sgt. Register in the shower. He stated that M.Sgt. S. Williams bent his knees towards his thighs to help hold him down for Sgt. Rester.

He further stated that he sued Lt. Sistrunk for his role in the incident on the walkway near the chapel when he and Lt. R. Williams were escorting Casby back from his x-ray after the incident with Sgt. Rester. He stated that during the walk, Lt. Sistrunk slammed him down to the ground where he landed on his stomach with his hands in cuffs underneath him. Casby stated that Lt. Sistrunk claimed that he "jacked away" aggressively towards Lt. R. Williams. Casby denies that he did. Casby stated that while he was face down on his stomach with his cuffed hands underneath him, Lt. Sistrunk and Lt. R. Williams beat him in the face and all over his body causing cuts on his lips. They then brought him back the medical unit. Casby claims that Major Rigdon, Lt. Sistrunk, and Lt. R. Williams were in the medical unit. He testified that Major Rigdon put up curtain and then hit him in the face. When he stopped, Cpt. Temple punched him in the chest. Casby further stated that Lt. Col. J. Williams and Lt. Col. Seal did not do anything or say anything to stop the other officers. He claims that they then wiped blood off of his mouth and took pictures.

Casby stated that he filed a grievance complaint about the incident behind the curtain, but the response indicated that the incident never happened.

Casby testified that in another incident, Sgt. Spears took him out of his cell to bring him to see the nurse. Casby claims that just outside of the cell, Sgt. Spears slammed him to the ground. Casby stated that Sgt. Spears claims that Casby was resisting him so he took him down and called for assistance. Sergeants Hancock, Magee, and Tynes all came to assist, but none of these officers did anything to him. Casby stated that he had no complaints against Sergeants Hancock, Magee, and Tynes. He stated that the person who prepared his complaint included them because the prison officials mentioned them in his grievance response.

Casby also testified that after his grievance complaints about his desire to engage in Rastafari practices (including hair length, diet, ordering books, and attending services) were denied, he filed suit in the 19th Judicial District Court after completing DOC review. Although he answered the Court's questions about the religious rules at the prison, Casby made clear that he did not intend to include any claims related to his Rastafari practices or the prison's religious restrictions in this lawsuit.[7]

### D. **Attachments to Complaints**

Casby referenced and attached to his complaints the administrative grievance complaints he filed at RCC and the responses from RCC and DOC officials related to the use of force and his medical care. The incorporated documents are summarized here.

---

[7] During the *Spears* Hearing, the Court instructed defense counsel to provide certain documentation related to the RCC policies on religious practices and literature and Casby's disciplinary records showing his rule violations and disciplinary segregation sentences. However, Casby clearly asserted that these claims are not before the Court in this case. He commented that the new warden at RCC appears to be receptive to discussing opportunities for him to grow his hair and receive religious materials. He also conceded that his other acts of defiance, including direct violations of officers instructions (*e.g.*, flushing contraband to be turned over, etc.) unrelated to his religious rights, accounted for his extended time in segregation. There is no need for the court to discuss or address the matters not being raised by the plaintiff.

### a. Grievance Case No. RCC-2020-64

The first attachment is Casby's January 28, 2020, grievance complaint about the alleged use of excessive force and retaliation against him on November 21, 2019, by Sgt. Rester in the front of the tier and later that day by Lt. R. Williams and Lt. Sistrunk on the short cut walkway near the chapel and on November 27, 2019, by Sgt. Spears in the lobby on the way to sick call.[8] Casby's grievance complaint details the same incidents outlined in his original complaint.

In the prison official's first step response dated February 27, 2020, the unit head denied Casby relief as unsupported by the evidence based on the Use of Force Reports, written statements from Lt. Col. Seal, Lt. Col. J. Williams, Major Rigdon, and Cpt. Temple, and Casby's medical examinations and photographs.[9] The response indicates that on November 20, 2019, Casby assaulted Sgt. Joseph Branch. Force had to be used by several officers to gain control of Casby, and during their efforts Casby struck Sgt. Benjamin Brumfield. Later that day, force was again used when Casby refused to be escorted to a different unit. The report indicates that the use of force ceased when Casby stopped resisting. After the last incident, Casby was placed in the shower where he threatened to spit on officers. Casby resisted being placed in a spit mask and acted as if he was going to spit on the officers. The officers then used chemical agents on Casby. The incidents were investigated by Colonel Jody Knight and the use of force was found to be "well within established guidelines."[10] Casby denied any injuries or the need for medication, although slight swelling of his right hand was noted. Casby received a rule violation for defiance and aggravated disobedience and was found guilty by the disciplinary board.

---

[8] ECF No. 1-1, at 1-3, Exh. i.
[9] Id. at 4-5, Exh. ii.
[10] Id. at 4.

The report went on to discuss the November 21, 2019, incident with M.Sgt. S. Williams and Sgt. Rester when Casby refused to go to the shower while his cell was searched. The report indicates that once he stopped resisting, he was placed on his feet and into the shower. The incident was investigated by Col. Knight who determined that the use of force was well within guidelines. Casby's only complaint after the incident was pain in his right hand. Casby received a rule violation for defiance and aggravated disobedience, and was found guilty by the disciplinary board.

The next incident discussed in the report was the November 21, 2019, incident with Lt. R. Williams and Lt. Sistrunk, on the walkway near the chapel when Casby resisted the escorts. Lt. Col. J. Williams and Lt. Col. Seal reported that when they arrived, Casby was being assisted to his feet. The report indicates that no one witnesses the use of any force against him and Col. Knight's investigation concluded that no unnecessary or excessive force had been used. Casby was examined and found to have superficial lacerations on his lips with no bleeding noted. He was charged with defiance and aggravated disobedience and found guilty by the disciplinary board.

Finally, the report indicates that on November 27, 2019, Casby resisted the escort and force was used by Sergeants Spears, Hancock, Magee, and Tynes. Col. Knight investigated and found that the force was found to be well within the guidelines. Casby denied injuries during the medical examination. He was charged with defiance and aggravated disobedience and found guilty by the disciplinary board.

On February 28, 2020, Casby indicated that he wished a second step review because the "first step response doesn't fully answer the ARP."[11] The second step response from the office of the DOC Secretary denied Casby, dated March 30, 2020, relief finding that none of the documents

---

[11] *Id.*, at 5.

support his allegations.[12] The response concluded for Casby that "[t]hrough your own actions of continued defiance and combative actions, staff was forced to use only the amount of force necessary to bring you into compliance with the verbal orders issued to you by staff."[13] The response also found that the controlling medical assessment found that the injuries Casby received were minor.

### b. Grievance Case No. RCC-2020-163

With his supplemental complaint, Casby relies on the grievance complaint he filed against Dr. Cleveland.[14] Casby did not include a copy of his grievance complaint. The first step response dated May 28, 2020, indicates that Casby complained that his medical needs were being ignored in retaliation for previous incidents.[15] The report outlines that Casby was treated by Nurse Peters on February 12, 2020, in accordance with standing orders. He was seen at sick call on March 7, 2020, by "EMT Justin Rester," and Casby refused the medication offered to treat his pain.[16] The report indicates that Dr. Cleveland as the Health Care Authority reviewed both encounters and issued no new orders. Casby was also seen by Dr. Cleveland on March 25, 2020, when hand x-rays were ordered. At the time of the first step report, the x-rays had not been completed and clinical operations were "on hold as a result of the current COVID-19 situation."[17]

On May 29, 2020, Casby indicates his intent to seek a second step review because he "wasn't getting the proper treatment before the Covid 19 situation."[18] The second step response from the office of the DOC Secretary, dated August 31, 2020, denied Casby relief finding that his

---

[12] *Id*. at 6, Exh. iii.
[13] *Id*.
[14] ECF No. 13, at 3-4.
[15] *Id*. at 3.
[16] *Id*.
[17] *Id*.
[18] *Id*.

medical care is "deemed adequate" after review of his statement and medical records.[19] The response indicated that Casby has been "noncompliant in the treatment plan" for his hand pain because he refuses to take Tylenol. In addition, despite his complaints of hand pain, the medical staff has found that he can move his hands and digits without difficulty and his hand are not swollen or discolored.

## II. Standards for a Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly

---

[19] *Id.* at 4.

baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.** **Discussion**

    **A.** **Eighth Amendment General Standards**

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In other words, the prison official must have a sufficiently culpable state of mind, one of "deliberate indifference" to inmate health or safety. *Id*. at 834. To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

    **B.** **Claims against Defendants Hancock, Magee, and Tynes**

Casby named as defendants Sergeants Hancock, Magee, and Tynes because they were on the scene of the November 27, 2019, incident with Sgt. Spears. During the *Spears* Hearing, Casby made clear that these officers did not do anything to him. He stated that Sgt. Spears was the one who pushed him to the ground that Sergeants Hancock, Magee, and Tynes only responded to Sgt. Spears's call for assistance, but the incident was over by the time they arrived. He also stated that the person who helped him draft his complaint wanted to include Sergeants Hancock, Magee, and Tynes because their names appeared in the prison officials' response to his related grievance complaint.

To establish a claim under § 1983, a plaintiff must allege that there was a constitutional violation by a person who was acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Casby, however, concedes that these officers did nothing to him. He has not allegations against them nor has he asserted a constitutional violation by any of them. For this reason, the claims against defendants Sergeants Hancock, Magee, and Tynes, should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

### C. Claims of Verbal Threats and Harassment

Casby claims that he was harassed and verbally threatened by officers at RCC based on his persistent refusal to cut his hair when ordered to do so by RCC officials, including Sgt. Branch who is not a defendant in this suit. Casby claims that these incidents of refusal resulted in harassment through disciplinary violations and his placement in segregation. He also contends that the subsequent incidents of excessive force and retaliation, neither of which is addressed in this frivolousness review, were part of this harassment related to the exercise of his Rastafari religious right to grow his hair. Broadly construing his complaint and *Spears* Hearing testimony, he asserts these claims against Sgt. Rester, M. Sgt. S. Williams, Lt. Sistrunk, Lt. R. Williams, Major Rigdon, Cpt. Temple, Sgt. Spears, Lt. Col. Seal, and Lt. Col. J. Williams.

Casby, however, has no claim under § 1983 for mere verbal threats and harassment. To the extent Casby believes that any statement by defendants was threatening or meant to harass him to get his hair cut, the law is clear that mere use of verbal slurs and threats by a prison guard do not rise to the level of a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a

14

constitutional violation."). Allegations of verbal threats and harassment by a guard simply do not state colorable civil rights claims and are not actionable under § 1983. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.). The Fifth Circuit also has consistently rejected retaliation claims based solely on a prison's guards use of threatening or derogatory language. *Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859-60 (5th Cir. 2020).

The Court is aware that the law is equally clear that prison officials may not act on their threats by actually retaliating against a prisoner for exercising his constitutional rights. *Walker*, 658 F. App'x at 726 (citing *Morris*, 449 F.3d at 684); *Woods*, 60 F.3d at 1164. Here, Casby alleges that there have been retaliatory actions and uses of force related to his efforts to get a religious exemption from the RCC grooming/hair regulations, or more accurately, a result of his refusal to comply with those regulations for religious reasons. These claims of excessive force and retaliation require further review and for that reason are not addressed in this frivolousness review. However, Casby's claims of mere verbal threats and harassing or unkind words brought against defendants Sgt. Rester, M. Sgt. S. Williams, Lt. Sistrunk, Lt. R. Williams, Major Rigdon, Cpt. Temple, Sgt. Spears, Sgt. Hancock, Sgt. Magee, Sgt. Tynes, Lt. Col. Seal, and Lt. Col. J. Williams should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

### IV.   Recommendation

It is therefore **RECOMMENDED** that Casby's § 1983 claims against defendants Hancock, Magee, and Tynes be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Casby's § 1983 claims of verbal threats and harassment against defendants Sgt. Rester, M. Sgt. S. Williams, Lt. Sistrunk, Lt. R. Williams, Major Rigdon, Cpt. Temple, Sgt. Spears, Lt. Col. Seal, and Lt. Col. J. Williams be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Casby's § 1983 claims of medical indifference against Dr. Cleveland, claims of retaliation and excessive force against defendants Sgt. Rester, Sgt. S. Williams, Lt. Sistrunk, Lt. R. Williams, Major Rigdon, Cpt. Temple, and Sgt. Spears, and claims of by-stander liability against Lt. Col. Seal and Lt. Col. J. Williams remain referred to the undersigned Chief Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[20]

New Orleans, Louisiana, this \_\_20th\_\_ day of April, 2021.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[20]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.